IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 13 Cr. 242 (SAS) |
| v. | The Hon. Shira A. Scheindlin |
| ROBERT TORRES, | |
| Defendant. | |

**DEFENDANT ROBERT TORRES' SENTENCING MEMORANDUM**

SEAN M. MAHER
*Counsel for Robert Torres*
The Law Offices of Sean M. Maher, PLLC
233 Broadway, Suite 801
New York, NY 10279
(212) 661-5333
(212) 227-5808 fax

**Introduction**

Since being born into a family in which almost every close adult was addicted to drugs, Robert Torres has struggled to find his place. As a young boy, Mr. Torres lived in a broken home in which his heroin-addicted father went in and out of jail while his crack-addicted mother left Mr. Torres to be watched by his slightly older sister. By age 7, Mr. Torres smoked marijuana daily; by 12, he snorted cocaine regularly. He acted out in school and always felt angry. The Department of Education placed Mr. Torres in special education classes. State protective services removed Mr. Torres from his mother's apartment numerous times, first placing him with his grandmother when he was around 8 years-old, then placing him in the custody of the Division of Youth for a good deal of his teenage years.

For most of his life, Mr. Torres has struggled with drug addiction and depression. Mr. Torres' involvement in this conspiracy was driven by his physical need to scrape enough money together to buy heroin for his own personal use.

In the months leading up to his arrest, Mr. Torres tried to change his life for the better by voluntarily admitting himself into a methadone/drug rehabilitation program at ▬▬▬▬▬▬▬▬. Detained for the last 20 months, Mr. Torres appreciates the gravity of his crime, his sobriety, and the loss and hurt he has caused himself and his family.

Despite his history of drug addiction, Mr. Torres is fortunate to have the love and support of his wife, children, step-children, siblings, cousins, and other family members and friends. Those closest to Mr. Torres attest to his kind, supportive, humble, and quiet

personality. Simply put, Mr. Torres has paid a hard price for his crime and is ready to keep taking positive steps to be the best father, partner, and person he can be.

## Procedural History

On April 3, 2013 federal authorities arrested Mr. Torres on an arrest warrant stemming from an indictment filed in the Southern District of New York. The first count of the indictment charged Mr. Torres and numerous co-defendants with conspiracy to distribute and possess with the intent to distribute heroin and crack cocaine.[1]

Mr. Torres pleaded guilty to Count One as described in the plea agreement provided to the Court and now stands before the Court for sentencing. The Probation Office conducted a presentence interview of Mr. Torres and issued its first draft of the Presentence Investigation Report ("PSR") on August 21, 2014. The final draft was completed September 18, 2014. Sentencing is scheduled for December 16, 2014.

## The Plea Agreement

After being charged by federal authorities, Mr. Torres, through counsel, expeditiously notified the government that he did not wish to seek a trial but instead wanted to accept responsibility and enter a plea of guilty. A formal plea agreement between Mr. Torres and the government was negotiated and a copy has been provided to the Court and the Probation Office.

Mr. Torres' plea agreement sets forth a stipulated Guidelines offense level of 23 and the applicable criminal history level is III, resulting in a sentencing Guidelines range of 51-71 months before taking into account a two-level downward variance for the

---

[1] Indictment No. 13 Cr. 242 (SAS). Count One charged a violation of 21 U.S.C. § 841(b)(1)(A). Under the plea agreement between the government and Mr. Torres, Mr. Torres was permitted to plead guilty to a reduced charge under Count One, namely a violation of 21 U.S.C. § 841(b)(1)(C).

reduction of the offense level in the November 2014 Guidelines.[2] The parties thus agreed that Mr. Torres "should be sentenced as though the applicable Guidelines range is 46 to 57 months' imprisonment."[3] Mr. Torres agrees that any sentence within that Guidelines range would be reasonable under 18 U.S.C. § 3553 and United States v. Booker,[4] and its progeny.

### The Probation Office's Sentencing Recommendation

The Probation Office generally concurs with the Guidelines calculation as set forth in the plea agreement, however it believes that a youthful offender adjudication in 1997 elevates Mr. Torres' Criminal History Category to IV, resulting in a guidelines range of 70-87 months.[5] The Probation Office also did not take the parties agreed-upon 2-level downward variance into account. It has recommended a sentence of 70 months' imprisonment to be followed by four years of post-release supervision.[6] No fine is recommended.[7]

### Analysis

**I.   Sentencing Post-*Booker***

Under Booker and its progeny, including United States v. Crosby,[8] and United States v. Cavera,[9] the Sentencing Guidelines, while no longer mandatory, are advisory

---

[2] Plea Agreement at 2-5.
[3] Plea Agreement at 5.
[4] 543 U.S. 220 (2005).
[5] PSR ¶¶ 44-75; 112. The 1997 youthful offender adjudication does not appear in Mr. Torres' rap sheet and the court paperwork has not been provided to the defense, thus Mr. Torres reserves his objection to counting this adjudication towards his criminal history category calculation.
[6] PSR at 30-34.
[7] PSR at 30-34.
[8] 397 F.3d 103 (2d Cir. 2005).
[9] 550 F.3d 180, 187 (2d Cir. 2008)(en banc).

and should be "taken into account" in determining the appropriate sentence under 18 U.S.C. § 3553(a).[10] The sentencing judge is to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."[11]

The Second Circuit has emphasized that "a district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense."[12] When considering whether to impose a sentence outside of the recommended Guidelines range, a district court "'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance,'"[13] in order to reach "an informed and individualized judgment in each case as to what is 'sufficient, but not greater than necessary' to fulfill the purposes of sentencing."[14]

In determining an appropriate sentence, a district court must adhere to § 3553(a), which directs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Such a sentence must be fashioned:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

---

[10] Booker, 543 U.S. at 264; see also Cavera, 550 F.3d at 189 ("The Guidelines provide the 'starting point and the initial benchmark' for sentencing, and district courts must 'remain cognizant of them throughout the sentencing process'")(quoting Gall v. United States, 128 S. Ct. 586, 596 & n.6 (2007)).
[11] Pepper v. United States, 131 S.Ct. 1229, 1240 (2011)(quoting *Koon v. United* States, 518 U.S. 81, 113 (1996)).
[12] Cavera, 550 F.3d at 189.
[13] Cavera, 550 F.3d at 189 (quoting Gall, 128 S. Ct. at 597).
[14] Id. (quoting 18 U.S.C. § 3553(a)).

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[15]

In the final analysis, the district court must consider all the factors outlined 18 § 3553(a):

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the four legitimate purposes of sentencing;

- the kinds of sentences available;

- the Guidelines range itself;

- any relevant policy statement by the Sentencing Commission;

- the need to avoid unwarranted sentence disparities among defendants; and

- the need to provide restitution to any victims.

## II. Applying the § 3553(a) Factors

Under the negotiated plea agreement, the defense agreed that a reasonable sentence is a Guidelines sentence in the range of 46-57 months (the "Stipulated Guidelines Range"). Taking into account all of the factors set forth in § 3553(a), it is respectfully submitted that the Court impose a sentence of time served with 3 years' post-release supervision with special conditions including drug testing and drug treatment as deemed necessary by the Probation Office, a sentence that is "sufficient but not greater than necessary" to achieve the objectives of sentencing.

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Torres

---

[15] See 18 U.S.C. §3553(a)(2); Pepper, 131 S.Ct. at 1243 (2011).

5

### i. *The Nature and Circumstances of the Offense*

The charged offense, as it relates to Mr. Torres, involved a conspiracy to distribute heroin and crack cocaine.[16] Mr. Torres was a low-level street seller or "pitcher,"[17] who sold in order to fund his own drug addiction.

Mr. Torres did not attempt to obstruct justice in any way, either at the time of his arrest or afterward.[18]

### ii. *The History and Characteristics of Mr. Torres[19]*

Robert Torres, a life-long resident of the Bronx, is the youngest of three children born to Sonia Colon and Gaspar Torres.[20] Sonia and Gaspar separated when Mr. Torres was young, leaving Robert in the care of his mother.[21] Throughout Mr. Torres' life, his father Gaspar has been in and out of jail for repeated drug trafficking and robbery offenses.[22] Gaspar has used illicit drugs, such as heroin, crack, and methamphetamine, for as long as Mr. Torres can remember.[23] Mr. Torres' mother Sonia also was addicted to drugs, particularly crack cocaine.[24]

Mr. Torres' childhood was heartbreaking. His parents separated when he was young, but neither parent provided the nurturing and stability that Mr. Torres needed. Mr. Torres' father, a life-long drug addict and repeat criminal offender, did not make

---

[16] PSR ¶¶ 16-20.
[17] PSR ¶ 20.
[18] PSR ¶¶ 42, 49.
[19] The PSR details Mr. Torres' family ties, family responsibilities, community ties, mental and emotional health, physical condition, substance abuse history, education and vocational skills, employment record, and financial condition.
[20] PSR ¶ 82.
[21] PSR ¶ 82
[22] PSR ¶ 82.
[23] PSR ¶ 82.
[24] PSR ¶ 85.

space in his life for Mr. Torres. A particularly sad example of Mr. Torres' early childhood is that he remembers his brother stealing marijuana out of his father's closet when Mr. Torres was just 5 years old.[25]

Mr. Torres' mother raised Mr. Torres and his siblings in a chaotic and dangerous household. Many times his mother, who stepped out frequently to smoke crack, left Mr. Torres to be watched by his sister, who was just a few years older than him.[26] Mr. Torres also spent a lot of time being shuttled back and forth between his mother's apartment and his grandmother's apartment.

By age 5 or 6, Mr. Torres began having problems in school and had even lit fires in his apartment.[27] He had difficulty controlling his emotions and behavior and recalls that he was very "angry" and "mad."[28] After being evaluated by the Board of Education, Mr. Torres was placed into special education classes.[29]

As a young boy, around 7 or 8, Mr. Torres' aunt, who was a heroin addict, and her two children moved into the apartment with Mr. Torres, his mother, and his older sister and brother.[30] As reported by Mr. Torres, his aunt sent her children to school in dirty clothes, leading a teacher to contact Social Services to investigate the household.[31] Upon seeing Mr. Torres' living conditions, Social Services took Mr. Torres from his mother and placed him in the care of his maternal grandmother, Marie Colon.[32]

---

[25] PSR ¶ 86.
[26] PSR ¶ 85.
[27] PSR ¶¶ 86, 97.
[28] PSR ¶ 97.
[29] PSR ¶ 97.
[30] PSR ¶ 85.
[31] PSR ¶ 85.
[32] PSR ¶ 85.

7

Things did not improve for Mr. Torres. He still had contact with his mother, who was physically abusive towards him and his siblings.[33] When Sonia wanted to discipline Mr. Torres, typically she would wait until Mr. Torres took a shower and then would whip his naked body with an extension cord as he stepped out of the shower.[34] To blunt the pain and abandonment he felt in his home, Mr. Torres started smoking marijuana daily when he was 7 years-old and began drinking alcohol when he was 9 or 10.[35] By age 12, he was snorting cocaine.[36]

In November of 1993, when Mr. Torres was 14 years-old, he was arrested for selling crack cocaine to an undercover officer.[37] Mr. Torres' delinquent behavior led to his being taken away from the family apartment again, but instead of being placed with a responsible adult family member, he was placed in the custody of New York State's Division for Youth ("DFY") for six months.[38] Upon being released from DFY, Mr. Torres went back to the family apartment and the concomitant chaos. Not surprisingly, Mr. Torres ended up in DFY custody within a year.

On September 20, 1994 Mr. Torres was admitted to Theodore Roosevelt High School.[39] A few months later in January of 1995, Mr. Torres, then 15 years-old, was arrested on another low-level drug charge and sentenced to 18 months in DFY custody.[40]

---

[33] PSR ¶ 86.
[34] PSR ¶ 86.
[35] PSR ¶ 100.
[36] PSR ¶ 100.
[37] PSR ¶ 55.
[38] PSR ¶¶ 55, 98.
[39] Exhibit A at 109. Exhibit A is comprised of records from DFY.
[40] PSR ¶ 56.

In February of 1996 at age 16, Mr. Torres again was placed in DFY custody and remained there until July of 1997.[41]

While in DFY custody, Mr. Torres had a tough time. DFY's Committee on Special Education classified Mr. Torres as ███████████████████ ███. Mr. Torres chaffed against heavy-handed authority figures and was arrested at age 16 at the DFY Highland facility with other juveniles for encouraging "other inmates to rebel."[42]

DFY records reveal that Mr. Torres was an emotionally damaged boy who was years-behind in his academic progress. One DFY entry states as follows:



Another DFY record states the following:



---

[41] Exhibit A at 5.

[42] PSR ¶ 57 (that fact that official DFY records characterized juveniles in a reformatory institution as "inmates" probably sheds light on the type of treatment Mr. Torres received while in DFY custody).

[43] Exhibit A at 60.



When Mr. Torres was 17 years-old, the Committee on Special Education at DFY recommended that Mr. Torres be classified as ███████████████ ███████████.⁴⁵ The same Special Education committee noted that Mr. Torres ████████████████████████████████████████████████████████████.⁴⁶

A DFY checklist of academic and behavioral weaknesses dated May 12, 1996 provides the following information regarding 16 year-old Mr. Torres:

Check the statements which apply to student:



---

⁴⁴ Exhibit A at 62.
⁴⁵ Exhibit A at 48.
⁴⁶ Exhibit A at 49.
⁴⁷ Exhibit A at 71.

During the same time period, one DFY staff member noted the following:



In May of 1995, when Mr. Torres was 15 years-old, his Woodcock Johnson

standardized test scores for reading indicated that

One DFY Committee on Special Education record from May 12, 1996 states the

following about Mr. Torres:



According to a DFY Education Treatment Team report of March 11, 1997, Mr.

Torres was

The document states further:

---

[48] Exhibit A at 70.
[49] Exhibit A at 28, 70.
[50] Exhibit A at 28.
[51] Exhibit A at 25.
[52] Exhibit A at 74.
[53] Exhibit A at 74.

11



Upon leaving DFY custody, Mr. Torres was ill-equipped to handle adult responsibilities. He was years behind academically, depressed, and emotionally scarred from years of exposure to hard core drug use and living in custodial institutions. Unsurprising, Mr. Torres' drug use sky rocketed and, unable to find and keep stable employment, he committed crimes to make money and pay for his drug addiction.

Upon being released from DFY custody, Mr. Torres was arrested on a string burglary, theft, and drug offenses. In April 2004, Mr. Torres was sentenced to five years' imprisonment on a burglary case and was not fully discharged of his sentence until he was 30 years-old.[55]

That term of imprisonment marked a shift in Mr. Torres' life. Mr. Torres no longer was an angry youth. He knew he was now an adult who wanted to have a family and be the type of father he never had.

Upon his release, Mr. Torres no longer committed burglaries or thefts. Instead, he accumulated a number of low-level user-amount drug possession arrests. Mr. Torres' drug use increased dramatically in 2009 after Mr. Torres' cousin Hector Rodriguez was

---

[54] Exhibit A at 93.
[55] PSR ¶ 66.

killed in a car accident.⁵⁶ Hector's death was a devastating blow to Mr. Torres, leading him to start using heroin and cocaine daily until his arrest in this case.⁵⁷

By 2012 Mr. Torres knew he could not keep going doing things as he had been doing. He knew that his drug addiction was destroying his life and that he could not overcome the addiction on his own. Mr. Torres decided to seek out professional help for his drug addiction. In 2012 through the help of a friend, Mr. Torres voluntarily checked himself into ▓▓▓▓▓▓▓▓▓ drug treatment program. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓⁵⁸ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓⁵⁹

The hospital's admission records states the following:



The program staff made the following assessment of Mr. Torres: ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

⁵⁶ PSR ¶ 101.
⁵⁷ PSR ¶ 101.
⁵⁸ Exhibit B at 4-5. Exhibit B is comprised of ▓▓▓▓▓▓▓▓▓▓▓▓ records.
⁵⁹ Exhibit B at 4-5.
⁶⁰ Exhibit B at 6.

13

████████████████████████████████████████████

████████

       Mr. Torres was ████████████████████████████████████████

████████████████████████████████████████████████████

████████ Mr. Torres completed several months of the program before being arrested in the instant matter.

       Over the years, Mr. Torres has matured considerably. Since 2007 he has been in a long-term committed relationship with Christina Martinez, who he has known since they were teenagers.[63] Christina has three sons from a prior relationship and Mr. Torres has raised all three boys as if they were his own. Mr. Torres and Christine have two children together: a daughter who is five and a son who is four.[64]

       Numerous family members and friends have written letters to the Court describing how much they love Mr. Torres and the positive influence he has had on their lives despite his own hardships.[65]

       Mr. Torres is a beloved family member and father. Christine's son ████ writes the following:

> My father Robert Torres was incarcerated about a year and a half ago, this changed my family in big ways. For one my mom was stuck to raise 4 kids by herself and support them financially by herself. Robert Torres isn't my biological father but he's been in my life ever since the age of 6 or 7 he and my mom has been the one's to raise me and support me. He was there to take care of me when my biological father wasn't When he and my mom first started together 7 years ago my mom had 3 kids from a previous

---

[61] Exhibit B at 10.
[62] Exhibit B at 14, 16, 21, & 29.
[63] PSR ¶ 90.
[64] PSR ¶ 90.
[65] The letters of support are attached as Exhibits C1-C13.

relationship and he still took the responsibility of loving and supporting us when my biological father wasn't. Even though me and my two brothers aren't his biological kids, he still pay a big part in our lives. And him getting incarcerated has been very hard for my whole family. This has been a very hard and devastating time in our family and I pray he can come home soon.[66]

Christine's son ███████ adds the following:

> My father Robert Torres is one of the best fathers I can ask for. . . . He all ways did things he didn't need to do he was very concerned about us. We may not be his real kids but he treats us like his real kid. I miss my father very much So does my family I hate to see my mother suffer without my father. I miss him very much and I hope to see him very soon.[67]

Mr. Torres' sister Nitza Sanchez writes the following:

> [Robert] has been in jail for about a year now and it truly has affected not only myself but everyone one around him including family, friends, etc. . . . Him being away from his kids has been very hard on everyone and I know how much it is affecting him to be away from them for this long. . . . As his sister I would like to say that my brother is an amazing brother, son, husband, and father. He has helped out in many ways that he could. He's done everything possible to help raise his kids and keep a roof over his family's head.
>
> My brother is like another father figure to myself as well. When I needed someone he was there. Even though he's had a hard past and life, I look up to my brother because of the sacrifices he has made. I see how his life started changing slowly when my niece and nephew were born. He is a devoted husband and father to all of his kids. Every day that has passed whenever I'm with my niece and nephew it's hard to see them wondering where their dad is and asking for him and wondering why he can't be around them.[68]

Those who know Mr. Torres find him to be kind, supportive, humble, and soft-spoken. Lisa Rodriguez writes the following:

---

[66] Exhibit C4, Letter of ███████████
[67] Exhibit C3, Letter of ███████████.
[68] Exhibit C9, Letter of Nitza Sanchez.

15

> I have known Mr. Torres for about 20 years. In the time I've known Mr. Torres I have seen a great amount of good that he's done. Mr. Torres is a kind hearted genuine man. I have been around long enough to tell you that he is a quiet humble person. I remember growing up and getting to know him wasn't that simple. For he was very quiet and shy and kept to himself most of the time. As time went by I was able to get to know Mr. Torres and the family, always happy never down kind of person. He always had an attitude of being positive about any situation that came across him.
>
> There was a time I encountered a horrific situation and was afraid to talk to anyone about, I remember seeing him as I walked around in a daze. He asked if I was okay and if I need to talk, I told him I was fine but he insisted on talking to me and getting my find focused on the positive things in life. Honestly if it wasn't for him only god knows what I would have done that night. For his kindness and positive words where so welcoming and gave me a sense of comfort. He made me realize there was a lot more to life for me to give up so easy.[69]

Christine's cousin Monique Carpio writes the following about Mr. Torres:

> Robert has stepped up and been a father to 3 of my cousins oldest boys. He has been the father that they don't have as well as being a father to ▇▇▇▇▇▇▇▇▇▇▇▇▇. He is also a father to his own children ▇▇▇▇▇▇▇▇▇.
>
> Robert has been a great support system for my cousin both emotionally and physically. The time that he's been away from his family has been especially hard for my cousin because now she's become a single mother to 5 children. It's been hard for her doing it all alone and it's taken a toll on her.[70]

Mr. Torres' cousin Crystal Rodriguez writes the following:

> I've known [Robert] all my life and I can say he has a big hear always helping other when he can. My kids adore him they always ask about him and say they miss him. I can always remember every time he see's my kids he would hug an kiss them play ball and all sorts of games Just to keep them calm and entertained. He would always come around asking how we were and if we needed anything. I just love the way he is with his kids he shows them so

---

[69] Exhibit C8, Letter of Lisa Rodriguez.
[70] Exhibit C1, Letter of Monique Carpio.

much love and affection always making sure they good the love he has for them is unexplainable.[71]

Finally, Christine shares the following:

> My husband Robert Torres means the world to me, he's a loyal husband and father to all my children. Without him our lives has been difficult to wake and sleep at night. I often feel I am forced to be a single mother at this time. I'm emotionally and physically drained, I need my husband by my side to help me. A typical day for me with our son ▇▇▇ who is 4 years old, his father potty trained him before he was incarcerated, no he has regressed, no longer using the bathroom, he has gone back to pampers.[72]

Since being detained at the MCC for the last 20 months, Mr. Torres has continued to make positive life choices. Since his initial detox, Mr. Torres has remained drug free. Mr. Torres has participated in several BOP programs and has received at least four certificates of completion. He has sought ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. He has regular visits with his family and looks forward to a drug-free life with them. At this stage in his life, Mr. Torres has moved from needing penological to rehabilitative and medical attention.

Besides the unique history and circumstances of Mr. Torres described above, the Court should consider granting a downward variance under 3553(a) for the 2-point U.S.S.G. drug table 2D1.1(c)(8) reduction that became effective in November 2014.

### B.  The Court Should Decline to Impose a Fine

Taking into consideration Mr. Torres' indigency, it is respectfully requested that the Court decline to impose a fine.

---

[71] Exhibit C7, Letter of Crystal Rodriguez.
[72] Exhibit C6, Letter of Christine Martinez.

## Conclusion

Accordingly, for all the reasons set forth above, it is respectfully submitted that the Court impose a sentence of time served with 3 years' post-release supervision with special conditions of drug testing and treatment as deemed necessary by the Probation Office.

Dated: December 4, 2014

Respectfully submitted,

_____/S/_____
SEAN M. MAHER
SM 7568
*Counsel for Robert Torres*
The Law Offices of Sean M. Maher, PLLC
233 Broadway, Suite 801
New York, NY 10279
(212) 661-5333
(212) 227-5808 fax